IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENTSPLY SIRONA INC.,** | : | CIVIL ACTION NO. 1:17-CV-1530 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **NET32, INC.,** | : | |
| Defendant | : | |

**MEMORANDUM**

Plaintiff Dentsply Sirona Inc. ("Dentsply") commenced this action against defendant Net32, Inc. ("Net32") pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*. (See Doc. 1). Before the court is Net32's motion to dismiss (Doc. 22) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will grant Net32's motion.

**I.    Factual Background & Procedural History**

Dentsply manufactures a range of dental products that are sold in the United States and abroad. (See Doc. 1 ¶¶ 6, 11). It utilizes a network of authorized distributors to sell its products and each product contains a registered United States trademark owned by Dentsply. (Id. ¶¶ 6-9; see also Doc. 1-2). According to Dentsply, its trademarks have "achieved worldwide fame" and are "well known throughout the United States." (Doc. 1 ¶¶ 13, 42).

Net32 operates an online marketplace that "connects customers to vendors offering discount dental supplies," including discounted Dentsply products. (See id. ¶¶ 10-11). Vendors on Net32's website are not authorized distributors of Dentsply products. (Id. ¶ 11). Many of Net32's vendors acquire Dentsply products intended

for sale outside of the United States and re-sell them through Net32's website. (Id.) Such products are referred to as "gray market goods."[1] (Id.)

Dentsply contends that the products sold by Net32's vendors are "materially different" from the products sold by Dentsply and its authorized distributors. (Id. ¶ 12). Specifically, Net32's vendors sell Dentsply products in "sizes and quantities not offered for sale . . . within the United States," and where the packaging is "defaced," contains "foreign language labeling," and states that the goods are "not intended for sale within the United States." (Id. ¶ 15). Dentsply avers that these differences "are likely to cause confusion among Dentsply's customers"—both current and prospective. (Id. ¶¶ 14, 23). Dentsply further avers that Net32 vendors' are diluting the "distinctiveness" of the Dentsply marks. (Id. ¶¶ 17, 43). Dentsply notified Net32 that its vendors were selling "materially different gray market Dentsply products," but Net32 purportedly took no corrective actions. (See id. ¶¶ 19-21, 26-27, 36-37, 46-47).

Dentsply commenced this action on August 25, 2017, asserting claims for contributory trademark infringement, unfair competition, false description, false designation of origin, and trademark dilution. Dentsply also sought a preliminary injunction. Following extensive briefing by the parties and an evidentiary hearing,

---

[1] A gray market good is a "foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 285 (1988). Gray market goods are "neither counterfeit goods nor goods masquerading as genuine by adopting confusingly similar marks; they use the actual marks and the marks are lawfully affixed to them." Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd., 409 F. Supp. 2d 264, 266 (S.D.N.Y. 2005).

we denied Dentsply's request for preliminary injunctive relief.  Net32's motion to dismiss Dentsply's complaint for failure to state a claim upon which relief may be granted is presently before the court and ripe for disposition.

## II.     **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Dentsply asserts its Lanham Act claims against Net32 on a "contribution" theory of liability. A manufacturer or distributor can be held contributorily liable for Lanham Act violations of another if they "intentionally induce" the conduct at issue or continue to supply their product to one whom they know or have reason to know is violating the Act. See AT&T Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1432-33 (3d Cir. 1994) (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 853-54 (1982)). Dentsply does not allege any facts to suggest Net32 intentionally induced its vendors to engage in trademark infringement or unfair competition. Dentsply instead avers that Net32 allowed its vendors to continue utilizing Net32's website despite knowledge that the vendors were engaging in such conduct. To survive Rule 12 scrutiny on each of its claims, Dentsply must allege a

4

Lanham Act violation by Net32's vendors and knowledge of that violation by Net32. The court will address Dentsply's claims *seriatim*.

### A. Contributory Trademark Infringement, Unfair Competition, False Description, and False Designation of Origin (Counts I & II)

Claims for trademark infringement, unfair competition, false description, and false designation of origin involve similar and distinct elements. All four claims, however, share a common element of consumer confusion.[2] See Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001); A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000); AT&T, 42 F.3d at 1428. The traditional Lapp factors, used to determine whether there is a likelihood of confusion in standard trademark infringement cases, are inapplicable in the gray market good context. See Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983) (citing Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir. 1978)). Rather, the relevant question is whether or not the products sold by the alleged infringer are "genuine." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302-03 (3d Cir. 1998). A product is considered genuine if there are no "material differences" between the product sold by the trademark owner and the product sold by the alleged infringer. Id.

Differences may be considered material if they are "likely to damage the goodwill developed by the trademark owner in the trademarked goods." Id. When

---

[2] Claims for trademark infringement and unfair competition require a "likelihood of confusion," claims for false description—or false advertising—require "actual deception or a tendency to deceive," and claims for false designation of origin require a likelihood of "confusion, mistake, or deception." See Highmark, 276 F.3d at 171; A&H Sportswear, 237 F.3d at 210; AT&T, 42 F.3d at 1428.

the trademark owner and alleged infringer sell materially different products that bear identical marks, consumers are likely to be confused about the "quality and nature" of the trademarked good. Id. But when the differences between the products are "so minimal" that consumers who purchased from the alleged infringer get "precisely what they believed they were purchasing," the goods may be considered genuine and there will be no liability under the Lanham Act for the alleged infringer. Id. at 303-04 (quoting Weil Ceramics & Glass, Inc. v. Dash, 878 F.2d 659, 672 (3d Cir. 1989)). There is no exhaustive list of differences that may be considered material for purposes of the "genuineness test." Id. at 304.

Net32 contends that Dentsply fails to allege that the differences between the products sold by Net32's vendors and the products sold by Denstply's authorized distributors are material. (See Doc. 23 at 7-8; Doc. 36 at 4, 6-10). We agree. Dentsply identifies four differences, to wit: "defaced packaging," "packaging that has foreign language labeling," "packaging identifying the goods as not intended for sale within the United States," and goods "offered in sizes and quantities not offered for sale by Dentsply and its authorized dealers within the United States." (Doc. 1 ¶ 15). But Dentsply fails to offer *allegata* describing how or why these differences are material such that they are likely to cause confusion amongst consumers. Cf. Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc., 474 F.3d 365, 370-71 (6th Cir. 2007); Rockwell Automation, Inc. v. Radwell Int'l, Inc., No. 15-5246, 2016 WL 7018531, at \*4 (D.N.J. Nov. 30, 2016); Sprint Nextel Corp. v. Simple Cell, Inc., No. 13-617, 2013 WL 3776933, at \*8 (D. Md. July 17, 2013). This deficiency is fatal to Dentsply's claim. Accordingly, we find that Dentsply fails to plausibly

6

<mark>Case 3:20-cv-00200-FDW-DSC    Document 68    Filed 07/19/18    Page 6 of 8</mark>

allege that Net32's vendors engaged in trademark infringement or acts of unfair competition.  See TechnoMarine SA v. Jacob Time, Inc., 905 F. Supp. 2d 482, 490-93 (S.D.N.Y. 2012).  The court will grant Net32's motion to dismiss Counts I and II.

## B. Contributory Trademark Dilution (Count III)

To establish a *prime facie* case of trademark dilution, a plaintiff must allege that: (1) they are the owner of a "famous mark" in light of the four factors set forth in 15 U.S.C. § 1125(c)(2)(A); (2) the defendant is making "commercial use" of the mark in interstate commerce; (3) defendant's use of plaintiff's mark began after the mark "became famous;" and (4) defendant's use "causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services."  See Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157, 163 (3d Cir. 2000); see also Dille Family Trust v. Nowlan Family Trust, 276 F. Supp. 3d 412, 434 (E.D. Pa. 2017).  Net32 does not dispute that Dentsply's allegations satisfy the second and third elements.  (See Doc. 23 at 21-22).  Thus, the court need only determine whether Dentsply adequately alleges that its mark is famous and that Net32's vendors' use of the mark "causes dilution."

A mark is considered famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. 1125(c)(2)(A).  Fame within a particular niche market—that is "fame limited to a particular channel of trade, segment of industry or service, or geographic region"—is insufficient.  Harp, 984 F. Supp. 2d at 421 (quoting Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2013)).  Assuming *arguendo* that Dentsply's contention that its marks

are "famous and well known throughout the United States," (Doc. 1 ¶ 42), is sufficient to demonstrate fame outside of the dental industry, Dentsply's failure to allege material differences between products sold by Net32's vendors and products sold by Denstply's authorized distributors precludes Dentsply from demonstrating that Net32's vendors' use of its mark causes dilution. See Dan-Foam, 500 F. Supp. 2d at 308-09, 312, 317. Hence, Dentsply's trademark dilution claim necessarily fails. The court will grant Net32's motion to dismiss Count III.

**IV. <u>Conclusion</u>**

The court will grant Net32's motion (Doc. 22) to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER<br>
Christopher C. Conner, Chief Judge<br>
United States District Court<br>
Middle District of Pennsylvania

Dated: July 19, 2018