# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENTSPLY SIRONA INC. | : | Civil No. 1:17:CV-01530 |
| Plaintiff, | : | |
| v. | : | |
| NET32, INC., | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

This is a trademark case under the Lanham Act arising out of the sale of gray market goods—that is, goods manufactured for sale outside of the United States and bearing valid United States trademarks that are imported into the United States without the consent of the trademark owner—on an online marketplace. The case is presently before the court on a motion to dismiss the amended complaint filed by Defendant Net32, Inc. ("Net32"). The motion seeks to dismiss the amended complaint for failure to state a claim upon which relief may be granted or, alternatively, to strike certain portions of the amended complaint. For the reasons that follow, the motion is granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began on August 25, 2017, when Plaintiff Dentsply Sirona Inc. ("Dentsply") filed a complaint against Net32 along with a motion for preliminary

1

injunction. (Docs. 1–2.) On September 20, 2017, Net32 filed a motion to dismiss the complaint. (Doc. 22.)

Chief United States District Judge Christopher C. Conner presided over a hearing on the motion for preliminary injunction on November 2, 2017, *see* Doc. 41, after which the court denied the motion for preliminary injunction on January 11, 2018. (Docs. 62–63.)

On July 19, 2018, the court granted Net32's motion to dismiss and ordered the case to be closed. (Docs. 68–69.) The following month, Dentsply filed a motion to alter or amend the judgment, asking the court to either set aside the judgment or permit it to amend its complaint. (Doc. 71.) The court granted the motion in part on March 27, 2019, allowing Dentsply to amend its complaint. (Doc. 79.) Dentsply then filed an amended complaint on April 2, 2019. (Doc. 80.)

The factual background provided here is according to the allegations in the amended complaint. Dentsply is a Delaware corporation headquartered in York, Pennsylvania that produces, markets, and sells dental products to retailers and distributors. (*Id.* ¶¶ 6, 8.) Dentsply owns a number of valid United States trademarks. (*Id.* ¶ 9.) Net32 is a North Carolina corporation that operates an online marketplace for discount dental supplies through its website, net32.com. (*Id.* ¶¶ 7, 17.)

Dentsply sells its products both in the United States and internationally, but its sales in the United States are conducted through a network of authorized distributors. (*See id.* ¶ 12.) Net32 is not an authorized distributor of Dentsply products, nor are any of the vendors offering Dentsply products for sale on Net32's website, with the exception of Orange County Dental. (*Id.* ¶ 18.)

A number of vendors offer gray market Dentsply products for sale on Net32's website. (*Id.* ¶ 21.) Many of the gray market Dentsply products are intended only for international sale and not for sale in the United States. (*Id.* ¶ 22.) Net32 has allegedly been aware that vendors are offering gray market Dentsply products for sale on its website since at least January 2015, when it began receiving customer complaints regarding the gray market products. (*Id.* ¶¶ 23, 25.)

Net32 received a customer complaint regarding a gray market Dentsply product in September 2015. (*Id.* ¶ 32.) The product—a Dentsply Spectrum TPH-3—had been sold on Net32's website by vendor Tradent Supply, despite containing a label stating that it was not registered for use in the United States. (*Id.* ¶¶ 32–33.) In fact, the Spectrum TPH-3 had not been registered for sale with the United States Food and Drug Administration ("FDA") since 2004. (*Id.* ¶ 40.) Despite that legal status and the customer complaint regarding the product, Net32 continued to permit vendors to list the Spectrum TPH-3 for sale on its website until October 2017, when it halted sales of the product. (*Id.* ¶¶ 41–46.)

3

Net32 received customer complaints about gray market sales of another Dentsply product, Dycal, in June 2014 and January 2016. (*Id.* ¶¶ 48–57.) The first of those complaints was from a dentist who complained that the product did not seem to be an authentic Dentsply product. (*Id.* ¶ 49.) The second complaint was from a dentist who complained that the product seemed to be the "international version" and that it did not contain English writing. (*Id.* ¶ 51.) Both sales were for a foreign version of Dycal that was manufactured in Brazil and not listed for sale in the United States. (*Id.* ¶ 55.)

Net32 received a customer complaint regarding a gray market sale of a third Dentsply product on February 23, 2017. (*Id.* ¶¶ 58–59.) The product, Dyract, was manufactured in Germany for exclusive sale in India. (*Id.* ¶ 63.) The customer who purchased the product complained that it should not have been sold since it was exclusively listed for sale in India. (*Id.* ¶ 59.) Nevertheless, the vendor who sold the product on Net32's website, First Dent Supply, responded by stating that if the product had not received FDA approval "it would be impossible to import [it] into the US." (*Id.* ¶ 61.) Net32 allegedly failed to investigate whether the product was approved for sale in the United States and instead published First Dent Supply's misleading response on its website. (*Id.* ¶¶ 62–65.)

Dentsply alleges that there are a number of differences between the gray market products listed for sale on Net32's website and the products that it offers

4

for sale in the United States through its network of authorized distributors. First, the gray market products fail to comply with applicable FDA packaging regulations. (*Id.* ¶¶ 66–74.) Second, the gray market products direct customers to Dentsply's European website, which, because it is not in English, is difficult for an English-speaking American to navigate. (*Id.* ¶¶ 75–79.) Third, the gray market products are often not marked for sale in the United States. (*Id.* ¶¶ 80–99.) Fourth, the gray market products are often sold in quantities and sizes that are not offered in the United States. (*Id.* ¶¶ 100–09.) Fifth, the gray market products are often sold in packaging that has been altered, damaged, or otherwise tampered with. (*Id.* ¶¶ 110–22.) Sixth, some of the gray market products are sold with stickers that have either been removed from the products or affixed to them. (*Id.* ¶¶ 123–24.) Seventh, some of the gray market products are sold in packaging other than the manufacturer's original packaging. (*Id.* ¶¶ 125–31.) Finally, some of the gray market products are sold without FDA-mandated instructions. (*Id.* ¶¶ 132–36.)

Dentsply alleges that the differences between the gray market products listed for sale on Net32's website and the products that it offers for sale in the United States through its network of authorized distributors are material because they:

   a. Diminish Dentsply's ability to offer post-sale customer service and quality control;

   b. Diminish Dentsply's ability to effectively conduct a recall or take other market action with respect to a product;

5

c. Eviscerate Dentsply's ability to attest to the integrity of the supply chain, including assessing whether the product has been appropriately handled, stored, shipped, etc.;

d. Diminish Dentsply's ability to guarantee the quality or integrity of Dentsply products;

e. Cause customers to question the authenticity, reliability, and quality of Dentsply products;

f. Create customer confusion as to the source of the products and the warranties offered on those products;

g. Create customer confusion by instigating suspicion about whether the product is counterfeit, "bootleg," a "fake replica," a "cheap version," or gray market;

h. Create customer confusion by instigating suspicion about whether the product has been tampered with or altered;

i. Create customer confusion by instigating suspicion about whether the product is authorized for sale in the United States by the FDA;

j. Create customer confusion by instigating suspicion, frustration, or concern about foreign-market pricing as compared to United States market pricing;

k. Cause customer confusion, doubt, disappointment or frustration when product size and quantity expectations are not met;

l. Cause customer confusion, disappointment, frustration or anger when Dentsply refuses to honor its manufacturer's warranty or refuses to return, refund, or exchange a product not purchased from Dentsply or through its authorized network;

m. Concern the sale of goods that are not fully authorized by the FDA for sale in the United States; and,

6

n. Tarnish the commercial magnetism of Dentsply's trademarks.

(*Id.* ¶ 137.)

According to the amended complaint, Net32 first received a customer complaint regarding a gray market Dentsply product in June 2014. (*Id.* ¶ 148.) Dentsply notified Net32 that the gray market sales were infringing its trademarks on February 17, 2017, and demanded that the infringing products be removed from the website. (*Id.* ¶¶ 150–51.) Dentsply provided renewed notice to Net32 on February 5, 2018, specifically identifying products that were infringing its copyrights and asking that they be removed from the website. (*Id.* ¶ 152.) Net32 did not remove the products from its website and continued to allow vendors to offer them for sale. (*Id.* ¶¶ 153–59.)

The amended complaint raises three counts. Count I alleges contributory trademark infringement under 15 U.S.C. § 1114. (*Id.* ¶¶ 163–71.) Count II alleges contributory federal unfair competition, false description, and false designation of origin under 15 U.S.C. § 1125(a). (*Id.* ¶¶ 172–82.) Count III alleges contributory trademark dilution under 15 U.S.C. § 1125(c). (*Id.* ¶¶ 183–91.) As a remedy, Dentsply seeks various forms of injunctive and monetary relief. (*Id.* at 45–50.)

Net32 moved to dismiss the amended complaint on April 10, 2019, or, in the alternative, to strike certain portions of the amended complaint. (Doc. 81.) On April 22, 2019, the parties filed a joint motion to stay the case pending settlement

negotiations. (Doc. 82.) The court granted the motion on April 25, 2019. (Doc. 84.) The court subsequently extended the stay on August 12, 2019, allowing settlement negotiations to continue for another thirty days. (Doc. 88.) The stay expired on September 11, 2019, and Net32 then filed a brief in support of its motion to dismiss on September 18, 2019. (Doc. 89.) Dentsply filed a brief in opposition to the motion on October 2, 2019, and Net32 filed a reply brief on October 16, 2019. (Docs. 90, 93.) The case was reassigned to the undersigned pursuant to a verbal order from Judge Conner on November 14, 2019.

Briefing on Net32's motion to dismiss has concluded and the motion is ripe for the court's resolution. The court considers the parties' arguments regarding dismissal below.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

8

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

At the outset, the court observes that Dentsply's claims against Net32 are all based on a theory of contributory liability under the Lanham Act. A defendant may be held liable for a contributory violation of the Lanham Act where the defendant knows of a third party's direct violation of the act. *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1432 (3d Cir. 1994). To be held contributorily liable, the defendant must have knowledge of the third party's infringement and induce, cause, or materially contribute to the violation. *Basketball Mktg. Co., Inc. v. FX Digital Media, Inc.*, 257 F. App'x 492, 495 (3d

9

Cir. 2007) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)).

In its motion to dismiss, Net32 argues that (1) Dentsply fails to state a claim for contributory trademark infringement because it has not plausibly alleged direct infringement of its trademarks or that Net32 had knowledge of the direct infringement (Doc. 89 at 8–19); (2) Dentsply fails to state a claim for contributory unfair competition, false description, and false designation of origin for the same reasons it fails to state a claim for contributory trademark infringement (*id.* at 19–21); and (3) Dentsply fails to state a claim for contributory trademark dilution because it has not plausibly alleged that its marks are famous or that third-party vendors on Net32's website are using the marks in such a way as to dilute the fame of the marks (*Id.* at 21–23). Net32's arguments for dismissal are addressed in the following sections.

**A. Dentsply Adequately Pleads Contributory Trademark Infringement**

The court will first analyze Net32's argument that Count I of the amended complaint should be dismissed because Dentsply fails to allege contributory trademark infringement. (Doc. 89 at 9.) Under Section 32 of the Lanham Act, 15 U.S.C. § 1114, a defendant is liable for trademark infringement when the defendant uses a trademark in such a way as to cause "a likelihood of confusion." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319 (3d

10

Cir. 2015) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 710 (3d Cir. 2004)). "The relevant question is not whether consumer confusion is a possibility, but whether confusion is likely." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005).

The Lanham Act allows the owner of a trademark to "enjoin the sale of products containing the owner's authentic mark when the products offered for sale are similar but not identical to those offered by the trademark owner." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998). This allows the trademark owner to prevent the sale of gray market goods that were manufactured for sale in foreign markets and subsequently imported for resale in the United States. *Id.* at 302. To prevent the sale of such gray market goods, the trademark owner must prove that the goods are not "genuine," which requires a showing that there are "material differences" between the gray market goods and the goods that the trademark owner ordinarily sells in the United States. *Id.* at 302–03. If there are no material differences between the products, then the gray market goods are genuine and the claim fails. *Id.* at 303.

There is no "exhaustive list of the types of differences between products that can be considered material for the purposes of the genuineness test." *Id.* at 304. Nevertheless, because the purpose of the test is to determine whether the gray market goods are likely to injure the trademark owner's goodwill, "[a]ny

11

differences that are likely to damage the goodwill developed by the trademark owner can be deemed material." *Id.*

Net32 argues Count I of the amended complaint should be dismissed because Dentsply fails to allege trademark infringement. (Doc. 89 at 9.) Net32 argues that the minor differences between the products sold on its website and the products Dentsply ordinarily sells in the United States are not material. (*Id.*) Net32 further argues that the transcript of the preliminary injunction hearing and the rest of the record establish that there is no likelihood of confusion regarding the products. (*Id.* at 9–10.) Net32 acknowledges that the amended complaint contains additional allegations of differences between the products, but argues the allegations are insufficient to cure the original complaint's defects. (*Id.* at 11–13.)

Dentsply argues it sufficiently pleads trademark infringement because it alleges material differences between the Spectrum TPH-3, Dycal, and other products sold on Net32's website and the products it ordinarily sells in the United States. (Doc. 90 at 12–17.) Dentsply argues it sufficiently pleads customer confusion arising from those material differences because it alleges numerous instances in which confusion was not only likely, but actually occurred. (*Id.* at 17–19.)

Net32 argues in its reply brief that Dentsply has not plausibly alleged consumer confusion. (Doc. 93 at 10–17.) Net32 notes that Dentsply has not

12

alleged that the gray market products lack FDA approval or that the quality or chemical composition of the products is different. (*Id.* at 11–13.) Net32 argues the allegations of consumer confusion from differences in packaging are insufficient to plead consumer confusion because Dentsply admitted during the preliminary injunction hearing that those differences were not material. (*Id.* at 13–14.) Net32 argues that the remaining differences between the products are de minimis and thus insufficient to plead consumer confusion. (*Id.* at 14–17.)

The court finds that Dentsply adequately pleads trademark infringement. Dentsply alleges specific instances in which the gray market goods sold on Net32's website differ in quantity and packaging from the genuine goods Dentsply sells in the United States. (*See, e.g.*, Doc. 80 ¶¶ 48–57, 110–31.) Differences in quantity and packaging can be material. *See, e.g.*, *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 643 (1st Cir. 1992) (finding that differences in packaging between gray market candies and genuine candies were material because they could cause confusion and harm trademark owner's goodwill); *Mavic, Inc. v. Sinclair Imps., Inc.*, No. 93-CV-02444, 1994 WL 7703, at *4 (E.D. Pa. Jan. 12, 1994) (noting that differences in packaging may be material where they are likely to cause confusion); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F. Supp. 1240, 1247 (D.N.J. 1991) (finding liability for trademark infringement where gray market goods differed from genuine goods in quantity and packaging),

13

*aff'd on the merits*, 935 F.2d 1281 (3d Cir. 1991), *and overruled on the issue of attorney fees*, 952 F.2d 81 (3d Cir. 1991).  Accordingly, Dentsply's allegations of differences in quantity and packaging between the products is sufficient to survive Net32's motion to dismiss since such differences can be considered material.[1]

In addition to alleging material differences in the products, Dentsply alleges specific instances in which the differences caused confusion.  (*See* Doc. 80 ¶¶ 32–136.)  For example, Dentsply alleges that a dentist purchased a gray market version of the Dentsply product Dycal that looked different from what he was expecting and that came in a metal tube rather than a plastic tube.  (*Id.* ¶¶ 48–49.)  The dentist complained that the product seemed to be a "fake replica" or "a cheap version made in Chile or some other place."  (*Id.* ¶ 49.)

Finally, Dentsply sufficiently pleads a claim for contributory liability because it alleges that Net32 had knowledge that vendors on its website were directly infringing Dentsply's trademarks and, despite that knowledge, allowed the vendors to continue selling the offending products on the website.  (*See id.* ¶¶ 148–59.)  Therefore, since the amended complaint alleges (1) that there are material differences between the gray market products sold on Net32's website and

---

[1] Given the court's conclusion that Dentsply adequately pleads material differences in the quantity and packaging of the gray market goods and the genuine goods, the court does not consider whether the other alleged differences between the products are material.

14

Dentsply's genuine products, (2) that those material differences have caused confusion, and (3) that Net32 had knowledge of trademark infringement occurring on its website and did not take steps to stop the trademark infringement, the court finds that Dentsply sufficiently pleads a claim for contributory trademark infringement against Net32. The motion to dismiss Count I of the amended complaint will, therefore, be denied.

### B. Dentsply Adequately Pleads Contributory Unfair Competition, False Description, and False Designation of Origin

In its motion to dismiss, Net32 moves to dismiss Count II of the amended complaint—which alleges contributory federal unfair competition, false description, and false designation of origin under 15 U.S.C. § 1125(a)—for the same reasons it seeks dismissal of Count I of the amended complaint: that Dentsply fails to allege material differences between the gray market products and its genuine products and that Net32 did not have any knowledge of direct trademark infringement. As discussed above, however, Dentsply's amended complaint adequately pleads that there were material differences between the products, that the material differences caused confusion, and that Net32 had knowledge of direct trademark infringement. Accordingly, the court will deny the motion to dismiss Count II for the same reasons it denied the motion with regard to Count I.

15

### C. Dentsply Fails to State a Contributory Trademark Dilution Claim Upon Which Relief May Be Granted

Net32 argues that Count III of the amended complaint should be dismissed because it does not state a contributory trademark dilution claim upon which relief may be granted. (Doc. 89 at 21.) To state a claim for trademark dilution, a plaintiff must allege that (1) it owns a mark that qualifies as famous; (2) the defendant is using a mark or trade name in interstate commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use dilutes the plaintiff's trademark "by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 163 (3d Cir. 2000).

Here, Dentsply's only allegation regarding the fame of its marks is the conclusory statement that the marks "are famous and well known throughout the United States." (Doc. 80 ¶ 184.) A conclusory allegation that a mark is famous is insufficient to state a trademark dilution claim upon which relief may be granted. *See, e.g.*, *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-CV-05246, 2016 WL 7018531, at *6 (D.N.J. Nov. 30, 2016) (finding that plaintiff failed to state trademark dilution upon which relief could be granted where it failed "to plead facts supporting wide recognition of its marks by the general consuming public"); *Xtreme Caged Combat v. ECC Fitness*, No. 12-CV-03855, 2012 WL 5893970, at

\*7 (E.D. Pa. Nov. 21, 2012) (finding that plaintiff failed to state trademark dilution claim where it failed to allege facts related to the recognition of its mark as famous); *cf. N.V.E., Inc. v. Day*, No. 07-CV-04283, 2009 WL 2526744, at \*2 (D.N.J. Aug. 18, 2009) (finding that plaintiff failed to plead a state law claim for trademark dilution where it had not made any factual allegations "regarding the distinctiveness, the degree of recognition, and the geographic scope of its marks").

Thus, since Dentsply's allegation of the fame of its marks is based entirely on a conclusory statement that the mark is famous, the court concludes that the amended complaint fails to state a contributory trademark dilution claim upon which relief can be granted. The court will accordingly grant the motion to dismiss to the extent that it seeks dismissal of Count III of the amended complaint.

**D. The Court Will Grant Dentsply's Motion to Strike**

Finally, Net32 argues that the amended complaint should be dismissed, or, in the alternative, stricken to the extent that it seeks relief based on products that are intended for sale in the United States. (Doc. 89 at 23.) Dentsply generally concedes this argument, clarifying that "it does not seek to enjoin Net32 from the sale of genuine Dentsply product. Dentsply seeks to enjoin Net32 from infringing upon its marks by facilitating the sale of non-genuine Dentsply product, including materially different gray market goods, or goods intended for sale outside the United States." (Doc. 90 at 28.)

17

Accordingly, the court will grant Net32's motion to strike and strike those portions of Dentsply's prayer for relief that relate to genuine Dentsply products. The amended complaint's prayer for relief, *see* Doc. 80 at 45–50, shall pertain solely to non-genuine Dentsply products, i.e., materially different gray market goods or goods intended for sale only outside the United States.

## CONCLUSION

For the foregoing reasons, Net32's motion to dismiss and/or strike the amended complaint (Doc. 81) is granted in part and denied in part. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 4, 2020